FILED

FEB 18 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **4:15CR0078 CEJ/NAB** |
| ) | |
| MICHAEL O'HARA, ) | |
| O'HARA LANDSCAPE/LAWN CARE, INC. and, ) | |
| PRO CARE ENVIRONMENTAL, LLC. ) | |
| ) | |
| Defendants. ) | |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

**1. INTRODUCTION**

At all times pertinent to this Indictment:

(A) The United States Department of Homeland Security (DHS), Citizenship and Immigration Services (CIS) is an agency of the United States, responsible for processing and reviewing applications for immigration benefits and employment-based visa petitions pursuant to the Immigration and Nationality Act.

(B) The United States Department of Labor (DOL), Employment and Training Administration (ETA) is an agency of the United States, responsible for the processing, review, certification, and approval of Applications for Temporary Employment Certification (ETA Form 9142) pursuant to the Immigration and Nationality Act.

(C) The Department of State (DS) is an agency of the United States responsible for reviewing and processing applications filed by aliens located abroad for non-immigrant visas filed at United States Embassies and Consular Offices.

(D) Under United States laws and regulations, non-citizens of the United States (aliens), are not permitted to work in the United States unless they obtain employment authorization. An H-2B visa is a non-immigrant visa granted to aliens seeking to work in the United States on a temporary basis. The H-2B non-immigrant visa program permits employers to hire aliens to come to the United States and perform temporary, non-agricultural services or labor on a one-time, seasonal, peak-load, or intermittent basis. There is a set limit on the number of aliens who may receive H-2B visa status during each government fiscal year. The H-2B visa classification requires the Secretary of Homeland Security to consult with appropriate agencies before admitting H-2B non-immigrants.

(E) Homeland Security regulations require the petitioning employer, prior to filing a H-2B visa petition with CIS, to apply for a temporary labor certification from ETA advising CIS that qualified United States workers were not available or willing to accept the job and that the aliens' employment would not adversely affect the wages and working conditions of similarly employed United States workers. ETA reviews and processes all H-2B applications on a first in, first out basis, regardless of whether the limit of H-2B visas has been reached.

(F) Since January 17, 2009, prospective employers seeking H-2B visa workers are required to file ETA Form 9142 (Application for Temporary Employment Certification) with ETA. The ETA Form 9142 is both an offer of employment to an alien by an employer, and a request from the employer to ETA to verify that a legitimate employment opportunity exists and that no United States workers are available or willing to accept the position, It is not necessary for the employer to individually name each temporary alien worker it wishes to employ; instead the employer can submit a request for multiple, unnamed alien workers as long as each alien is to

2

perform the same type of work on the same terms and conditions, in the same occupation, in the same area of intended employment, during the same period of time. In this regard, certification is issued to the employer, rather than the worker, and is not transferable from employer to employer.

(G) Among other things, an employer is required to certify on the ETA Form 9142 that sufficient funds are available to pay the wage or salary offered the alien, that the alien will be employed on or before the date the alien proposes entrance into the United States, that the wage offered is not based on commissions, bonuses, or other incentives, and that the offer of employment represents temporary, full-time work. Additionally, the employer is required to provide a geographical worksite location where the alien would perform his job.

(H) As the ETA Form 9142 can only be filed electronically, the employer must also submit by mail an ETA Form 9142 – Appendix B.1. The Appendix B.1 lists the employer's declarations required by the ETA Form 9142 and must be signed under penalty of perjury attesting that the information contained in the application is true and correct.

(I) If ETA certifies the application for temporary labor certification, the form is returned to the petitioning employer with a stamped certification and signature of the ETA certifying officer, along with a "Final Determination Letter" notifying the employer that their request has been certified. A temporary labor certification is valid only for the number of aliens, the occupation, the geographical area of employment, the specific occupation and duties and the period of time the employer specifies. Therefore, if a petitioning employer causes a temporary H-2B visa worker to enter the United States to work for an employer other than the petitioning

employer which received the labor certification, the alien's work authorization and immigration status is rendered invalid.

(J) After ETA certifies an employer's temporary labor certification, the employer must file with CIS a Petition for Non-immigrant Worker (Form I-129). On the Form I-129, the employer must certify that it will comply with the terms of the temporary labor certification and specify the job in which the alien will be employed, the address at which the work will be performed, the wage, the current number of employees, and the employer's income. Aliens can be specifically named on the Form I-129. Lastly, the employer is required to sign the Form I-129 petition under penalty of perjury, attesting that the petition and the evidence submitted with it is true and correct.

(K) CIS, if it approves the Form I-129 Petition, generates a Notice of Action (Form I797) which notifies the employer of the number of H-2B authorized visas. A copy is sent to the employer and the appropriate United States Embassy.

(L) Meanwhile, aliens seeking to enter the United States as H-2B visa workers are required to complete an Application for a Non-immigrant Visa (Form DS-156). The alien must submit the Form DS-156 to the United States Embassy or United States Consulate in the country from which they are applying and be interviewed by a consular officer. The consular officers review each individual alien's application and general qualifications. An application may be rejected for such things as criminal history, negative immigration history and undesirable affiliations. If an alien applicant named in a Form I-129 is denied, a substitute alien applicant is allowed to fill the visa slot authorized to the prospective employer. If the alien satisfies the consular officer that they do not intend to immigrate to the United States, an H-2B visa is

prepared for the alien at the Embassy or Consulate and affixed to the alien's passport. The H-2B visa specially lists both the alien's petitioning employer and the reference number of the corresponding Form I-129 petition. After the alien receives the H-2B visa, the alien is permitted to apply for entry into the United States with United States Customs and Border Protection (CBP), and if granted entry, CBP creates an I-94 Arrival/Departure Record, documents the entry on the alien's passport, and indicates the required date for the alien to depart the United States.

(M)   O'Hara Landscape/Lawn Care, Inc. (O'Hara Landscape) is a company that performs residential and commercial landscaping and lawn care services in the Eastern District of Missouri. It was incorporated in the State of Missouri on November 24, 2003. Michael O'Hara is the president and owner of O'Hara Landscape. The main company office is located in the 1000 block of North Lindbergh, St. Louis, Missouri.

(N)   Pro Care Environmental, LLC (Pro Care) is a company that was ostensibly organized to provide lawn care and landscaping services in the Eastern District of Missouri. It was organized in the State of Missouri in 2010. The main company office is located in the 1000 block of North Lindbergh, St. Louis, Missouri, in the same building and office space as O'Hara Landscape.

2.   **THE CONSPIRACY**

Between August 31, 2010 and the present, in the Eastern District of Missouri,

**MICHAEL O'HARA,
O'HARA LANDSCAPE, and
PRO CARE**

the defendants herein, did knowingly conspire, combine and agree, together and with S.G. and R.G. and others known and unknown to this Grand Jury, to commit the following offenses against the United States:

a. to knowingly subscribe as true, under penalty of perjury (as permitted under Title 28, United States Code, Section 1746), false statements with respect to material facts in applications, affidavits, or other documents required by the immigration laws or regulations prescribed thereunder, a criminal offense under Title 18, United States Code, Section 1546(a) (paragraph four);

b. to utter, use, attempt to use, possess, obtain, accept, or receive any immigrant or non-immigrant visa or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to have been procured by means of any false claim or statement, a criminal offense under Title 18, United States Code, Section 1546(a) (paragraph one); and

c. to make a materially false, fictitious, and fraudulent statement or representation in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, a criminal offense under Title 18, United States Code, Section 1001(a)(2).

3. **MANNER AND MEANS**

The means and methods by which the conspiracy was sought to be accomplished included, among others, the following:

a. It was part of the conspiracy that Michael O'Hara created Pro Care as a shell company as a means to facilitate and enhance O'Hara Landscape's access to H-2B visa workers.

b.  It was part of the conspiracy that Pro Care was held out to be an independent landscape and lawn care company, with its own employees, office space (leased from Michael O'Hara), equipment, financing, and client list when in fact Pro Care had none of the above but simply represented O'Hara Landscape assets as its own.

c.  It was part of the conspiracy that Michael O'Hara caused to be presented to ETA false and fraudulent statements on behalf of Pro Care in the supporting documentation for temporary labor certifications asserting that Pro Care was engaged in the business of providing landscaping and lawn care, that Pro Care had a bona fide need for H-2B visa workers, and that the client list of O'Hara Landscape was actually the client list of Pro Care.

d.  It was part of the conspiracy that Michael O'Hara caused to be presented to CIS false and fraudulent statements in petitions for H-2B visa workers asserting that Pro Care would exclusively employ the alien, that Pro Care was not submitting its petition with any other petition, and that the client list of O'Hara Landscape was actually the client list of Pro Care.

e.  It was part of the conspiracy that the H-2B visa workers approved for employment at Pro Care actually worked for O'Hara Landscape, thus allowing Michael O'Hara and O'Hara Landscape access to H-2B visa workers to which they were not otherwise entitled.

f.  It was part of the conspiracy that Michael O'Hara and O'Hara Landscape took steps to conceal from authorities the unlawful nature of Pro Care.

**4.  OVERT ACTS**

In furtherance of the conspiracy and to affect the objects of the conspiracy, the conspirators committed and caused the following over acts:

a. On or about December 28, 2010, Michael O'Hara caused S.G. to sign and submit to ETA a Form ETA 9142, falsely stating that Pro Care would engage in the business of providing lawn care and landscaping services, that the 25 (twenty-five) visa worker positions requested by Pro Care was bona fide, and that the request did not exceed Pro Care's manpower need. A list of O'Hara Landscape clients, falsely labeled as Pro Care clients, was also attached to the form.

b. On or about January 25, 2011, Michael O'Hara caused S.G. to sign and submit to CIS a Form I-129 (Receipt #WAC 11-078-51430) indicating that Pro Care would exclusively employ 25 (twenty-five) unnamed aliens for seasonal landscape work from February 15, 2011 until December 14, 2011.

c. On or about January 26, 2011, Michael O'Hara, on behalf of O'Hara Landscape, signed and submitted to CIS a Form I-129 (Receipt #WAC 11-080-51024) indicating that O'Hara Landscape would seasonally employ 57 (fifty-seven) unnamed aliens from April 1, 2011 until December 14, 2011.

d. On or about December 8, 2011, Michael O'Hara caused R.G. to sign and submit to ETA a Form ETA 9142, falsely stating that Pro Care was engaged in the business of providing lawn care and landscaping services, that the 30 (thirty) visa worker positions requested by Pro Care was bona fide, and that the request did not exceed Pro Care's manpower need. A list of O'Hara Landscape clients, falsely labeled as Pro Care clients, was also attached to the form.

e. On or about January 18, 2012, Michael O'Hara caused R.G. to sign and submit to CIS a Form I-129 (Receipt #WAS 12-075-50333) indicating that Pro Care would exclusively

employ 24 (twenty-four) unnamed aliens for seasonal landscape work from February 15, 2012 until December 14, 2012.

  f.  On or about February 7, 2012, Michael O'Hara, on behalf of O'Hara Landscape, signed and submitted to CIS a Form I-129 (Receipt #WAC 12-089-50416) indicating that O'Hara Landscape would seasonally employ 53 (fifty-three) unnamed aliens from April 1, 2012 until December 14, 2012.

  All in violation of, and punishable under, Title 18, United States Code, Section 371.

               A TRUE BILL.


_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney


_____
JOHN J. WARE, #40880MO
Assistant United States Attorney